Mr. Duncan, *pro quer.*


# *Executors of John Pawling *against* Administrators of Henry Pawling. [*220

Bond conditioned for the payment of 74ol. in seven years and the interest thereon yearly and every year; agreement indorsed thereon by the obligor that if any part of the interest should remain unpaid for the space of three months to allow the obligor lawful interest for the same from the end of the said three months until paid.   The agreement may be inforced, and is not usurious.

THE following case was submitted at a Circuit Court held for Franklin County, to the decision of YEATES and SMITH, justices, without argument.

Henry Pawling, the defendant's intestate, on the 12th May 1785, executed a bond to the plaintiffs' testator in the penalty of 1480l. in gold or silver, conditioned for the payment of 74ol., on or before the 12th May 1792, and the lawful interest thereon yearly and every year, from the date thereof.   He on the same day executed a power of attorney to enter up judgment on the bond.

On the 11th February 1786, the said Henry Pawling, by a sealed memorandum indorsed on the said bond, and by him subscribed in the presence of two witnesses, after reciting the said bond and condition, proceeded in these words: "and whereas "from our local circumstances, or from some other cause, the "said interest or some part thereof may remain unpaid for a "considerable time after due, and the said John Pawling thereby "suffer loss, now for preventing thereof, I do hereby covenant "and promise to and with the said John, that if any part of the "said interest shall remain unpaid for the space of three months, "to allow him the said John, lawful interest for the same, from "the end of the said three months until paid."

The question submitted to the court is whether the said covenant be prohibited by law, or good and valid? If the said court shall be of opinion, that the said covenant is prohibited, and not good or valid, then judgment to be entered for the plaintiffs generally; but if otherwise, then instructions to be given to the clerk of the Circuit Court, to calculate interest according to the said covenant, and enter up the final judgment accordingly.

The justices took time to look into the cases on the subject, and deliberate thereon; they afterwards certified their respective opinions, which were openly delivered by SMITH, J. at a Circuit Court held for Franklin county, before himself and BRACKENRIDGE, J. on the 30th September 1805, in manner following:

YEATES, J.   In Great Britain, by successive acts of parliament, the rate of interest on the loan of monies and other commodities was reduced to ten, and from thence to eight, six and five, in the hundred.   The stat. of 12 Ann. st. 2. c. 16, provides, that "after the 29th September 1714, no person shall, upon any con-"tract, take directly or indirectly for the loan of any monies, "wares, merchandize or other commodities whatsoever, above "the value of 5l. for the forbearance of 100l. for a year, "and so after that rate, for a greater or lesser sum, or for "a longer or shorter time; and that all bonds, contracts and as-"surances made after that time, whereby a greater rate of inter-"est shall be reserved or taken, shall be utterly void; and the "persons offending therein shall forfeit and lose, for every such "offence, the treble value of the monies, wares, merchandizes, "or other things so lent, bargained, exchanged, or shifted."   4 Ruff. stat. 642.

Our act of assembly of 2d March 1723, reduced the interest of money from eight to six per cent. per annum; and provides, "that no person shall directly, nor indirectly, for any bonds or "contracts thereafter to be made, take for the loan or use of "money or any other commodities, above the value of 6l. for "the forbearance of 100l. or the value thereof for one year; and "so proportionably for a greater or lesser sum; any law, custom, "or usage to the contrary notwithstanding, under the penalty of

" forfeiting, on conviction of the offence, the money and other " things lent." 1 Dall. St. Laws, 193.

The penalties of usury differ in the two countries clearly : and exclusive of the different rates of interest, it has been doubted, whether under our law, the words not pursuing the British statute, interest may be reserved here, payable at a shorter period, than the term of one year. The question before us is, whether on a bond conditioned for the payment of money in five years, and the interest thereon yearly, a covenant by the obligor to allow the obligee lawful interest on any interest due and remaining unpaid for the space of three months, from the end of the said three months, is good and valid, or whether the same be prohibited by law?

As a case of conscience, it racks the mind with no difficulties or doubts. By the original obligation, the creditor was entitled to the payment of his annual interest by a solemn compact : he had the same right to demand that sum every succeeding year, as he had to demand his principal at the end of five years : the non-payment of it was injurious to him, but advantageous to his debtor. No one therefore can refuse his concurrence in the sentiment of Lord Chancellor THURLOW, that " there is no reason, " if a man does not pay interest when he ought, why he should " not pay interest for that also." 1 Ves. jr. 99. 3 Bro. Cha. Ca. 440. The doubts on the present question arise from our habits in life, and the usual practice of courts of justice. And it must be conceded, that if it has been uniformly fixed as a rule of property, that interest cannot be legally received upon interest, we are bound to acquiesce.

It has been generally laid down as a rule both in the civil law *and in chancery, that interest should not be allowed upon interest. 2 Fonbla. 435. [*222

But the rule admits of exceptions. Amongst other instances, an account settled and allowed by the parties, will carry interest. 2 Ves. 365. 2 Bla. Rep. 761. So the assignees of a mortgage shall have interest on the interest due at the assignment of the mortgage, 2 Cha. Ca. 67, 68, 258. Vern. 169. 2 Vern. 135, provided it be made with the concurrence of the mortgagor, but not otherwise. 3 Atky. 271. 2 Cha. Rep. 78. Nels. 150. Pow. on Mortga. 426–7. And it has also been said by Lord Keeper FINCH, 1 Cha. Ca. 258, that a mortgagee whose mortgage was forfeited, should have interest for his interest ; but this rule does not appear, Prec. Cha. 116, to have prevailed in any case since, and has been laid aside. Pow. Mortg. 429. 2 Fonbla. 436.

In the case of mortgages it is certain, that in general an agreement made at the time of the mortgage, will not be sufficient to make future interest principal, such terms being considered as bearing hard upon the mortgagor, and as oppressive. Pow. Mortg. 441. In Lord Ossulston *v.* Lord Yarmouth, it was laid down by Lord Chancellor COWPER, that no precedent had ever

carried the advance of interest so far, that an agreement made at the time of the mortgage, would be sufficient to make future interest principal ; to make interest principal, it is requisite, that the interest be first grown due, and then an agreement concern-ing it may make it principal. 2 Salk. 449. Upon this ground and the principle of acts advantageous to infants being binding on them, was the case of the Earl of Chesterfield v. Lady Crom-well, decided in 1 Eq. Ca. Abr. 287. pl. 1. 9 Mod. 103. In Thornhill v. Evans, 2 Atky. 231, Lord HARDWICKE admits, that the mortgagor may upon agreement turn the interest into prin-cipal, but subjoins that it must be done fairly, and is generally upon the advance of fresh money, and even then, it is reckoned a hardship on the mortgagor and an act of oppression. It will not be asserted that this is usually adopted as a rule in England or this country, by monied men.

The rule laid down by Lord Chancellor PARKER, in Brown v. Barkham, 1 Wms. 653, seems more comfortable to the usual modes of transacting matters of this nature.

"To make interest on a mortgage principal, it is requisite "there should be a writing signed by the parties, for as much "as the estate in the land is to be charged therewith." Where a mortgage was given in Ireland, to trustees, by way of securing debts to creditors, and no money actually passed, but the sum nominally lent was to be paid by instalments, an agreement that the interest of those sums should rise, on nonpayment at the time appointed, or within three weeks after, from 5 to 8 per cent., *was held good, upon appeal to the house of lords. Bur-ton and Nutley v. Slatterley, 2 Bro. Parl. Ca. 68.

But whatever may be the law of England, as to interest re-ceivable on mortgages, the doctrine as to interest generally re-ceivable, has been much extended by courts of justice. Lord MANSFIELD says, upon nice calculations it will be found, that the practice of the bank, in discounting bills, exceeds the rate of 5 per cent. ; for they take interest upon the whole time the bills run, but pay only part of the money, viz. by deducting the interest first, yet this is not usury. Cowp. 115. The same doc-trine is asserted by BLACKSTONE, J. in 2d vol. of his Reports 793.

The reason herefor is given by the Court of Exchequer, in Caliot v. Walker, 2 Anstru. 497, that the statute allows interest, not merely of 5 per cent. for a year, but after the rate of 5 per cent. In that case, the court declared themselves strongly of opinion, that a custom in Liverpool for a banker to strike a bal-ance every quarter, and send the account to the merchant, and then to make that balance carry interest as principal for the next quarter, is not usury.

The case of Le Grange v. Hamilton, in 4 Term Rep. 613, is said to be relied on by the plaintiff's counsel. There, a memo-randum indorsed on a bond, which was conditioned for the pay-ment of 100l. by quarterly payments of 5l. each, and interest at

5 per cent., "that at the end of each year, the year's interest "due was to be added to the principal, and then the 20l. to be "received in the course of the year was to be deducted, and the "balance to remain as principal, and so to continue yearly, until "both principal and interest were fully paid," was held not usurious. But it was considered, both in the King's Bench and Exchequer Chamber, as a question of construction. Lord Kenyon says, it is admitted, that if they intended the computation of interest should be made on the whole sum of 100l. to the end of the year, notwithstanding the several parts of the principal had been paid at the stated periods, it would be usury. 4 T. R. 614. And all the judges of B. R. went on the ground, that it was not the interest on the 100l. lent, but the interest due that was to be added to the principal at the end of the year; and the interest due could only be taken to mean what was legally due. So also it was held by Lord Chief Justice EYRE, in the Exchequer Chamber. 2 H. Bla. 145.

The authority which has chiefly guided my opinion, is Morgan v. Mather, determined by the Lords Commissioners for holding the great seal.. 4 Ves. jr. 15. A motion was made to set aside an award. One of the objections made, was, that the arbitrators had allowed the defendant compound interest upon the settlement of an account current of several years without annual *interest. Lord Commissioner EYRE hesitated at first a good deal, upon the point relative to the compound [*224 interest. He was satisfied, that it was fair and necessary to have an interest account every year; but whether if there is no express settlement, it ought not to be carried on as interest, instead of being made capital, he had doubts. Ib. 16, 17. Afterwards he states, that Lord THURLOW, in Hankey's case, had said, that compound interest was never to be allowed, but on the ground of a contract between the parties to allow it; either an express contract, or to be inferred from the nature of their dealings. He himself had no doubt, there may be a previous contract for compound interest. Ib. 20, 21. Ashurst, commissioner says, compound interest may be allowed where there is a contract for it, or where it is the usage of the trade. And per Wilson, compound interest is not an unlawful thing in itself. Lord Commissioner EYRE desired it to be observed, that the court was not to be understood, to have laid down any thing on this subject of interest, that has relation to mortgages.

If this decision is correct, it has proceeded on ground sufficiently broad, to cover the principal case before us. I see no reason why he should not adopt it. The principles on which it is founded, tend to nothing immoral, but conduce to relative justice, and a due adherence to fair contracts. The creditor does not in the language of our law, "take for the loan or use of "money, directly or indirectly, above the value of 6l., for the "forbearance of 100l. for one year." Indeed here, he does not take this 6 per cent. per annum; because the yearly interest

stipulated to be paid, must be three months in arrear, before in-
terest can be calculated thereon.

Upon the best reflection I have been able to give the case, I
am of opinion, that the covenant to allow interest on the inter-
est, is good and valid in law, and should be enforced.

SMITH, J.   In the case of Crawford and company of Amster-
dam *v.* Willing and Morris, which was tried in the first week of
December term 1803, it became my duty to deliver the opinion
of the court to the jury, on the subject of interest ; the chief
justice declining to sit, because of his relationship to one of
the defendants, and YEATES, J. being indisposed.   I was then
led to make some preliminary observations, and to apply them
to the case then on trial.   Such of them as seem to me to be
applicable to the case now under consideration, I beg leave to
repeat.                                      ·

1. On the subject of interest, as well as on many other points,
the law has at length, although slowly, melted into common sense.
The few exceptions, which yet remain, will gradually wear away.

The pleading a deed, as lost by time and accident, is a strong
\*instance of the triumph of sound reason and substantial
justice over technical forms, by which justice had been
fettered.   3 T. R. 151.

*225] 

2. For many centuries, those who called themselves learned
men, and were so deemed by the rest of mankind, perplexed
themselves and others, on this point ; strangely mistaking a po-
litical rule among the Jews, and adapted to their peculiar system,
for a general moral precept, (2 Bla. 455,) although inconsistent
with, and destructive of all commercial intercourse.   Ord on
Usury, 3.

3. It is really a matter of much curiosity, to trace down the
progressive opinions upon this point.   In making the investiga-
tion, we will observe, how much the mind is fettered by form ;
with how much difficulty and struggling, it extricates itself from
received opinions and technical rules, however unfounded in rea-
son, however contrary to the great ends of society, in its present
commercial and cultivated state.

4. For a long period, all interest on money was held unlawful.
1 Dall. 52.   And strange to tell, it has never yet by any act of
the British (Ord. 31,) or of our own legislature, been declared
in express and general terms to be lawful.   It was held lawful
at first, only tacitly, or by implication, Ord. 31. 2 Dall. 105, per
Jefferson ; which has hitherto continued to be the mode of regu-
lating it, except in special instances, as on judgments.   1 St.
Laws, 13.   Nay, the 5th section of stat. 21 Jac. 1, c. 17, de-
clares, that *that* law shall not be construed to allow the practice
of usury, in point of religion or conscience.   5 Bac. 410.   Add,
for the satisfaction of the bishops.   Ord. 5.

5. The allowance of interest has been introduced with techni-
cal reluctance, or by slow degrees in many cases, in which com-

mon sense and commercial justice declared it equally due, as in other cases where it had been previously allowed. For instance, it was ruled, that no interest could be allowed for money lent, unless there be a note for it, 2 Stra. 910, and many other instances enumerated in 2 Dall. 105, *per* Jefferson. But see now 3 Wils. 206. 2 Bla. Rep. 761. Interest is due on all liquidated sums, from the instant the principal becomes due and payable. 2 Burr. 1081. For money lent. 1 H. Bla. 305. 1 Dall. 349. *Per* SHIPPEN, president. It is the constant practice in Guildhall, either by the contract, or in damages, to give interest for every debt detained. 1 Ves. jr. 63. *Per* Lord THURLOW. I cannot distinguish the case of interest due by contract, where there is no note, from the case where there is a note. 2 Ves. jr. 302. *Per* Lord LOUGHBOROUGH.

6. Formerly, interest was only calculated to the time of *bringing the action ; no interest could be recovered during its continuance till lately. 1 Bla. 263. 2 Burr. [*226 1085. Bull. 275.

In England, to this day, interest, subsequent to the judgment, cannot be recovered on it. 2 Ves. jr. 162. A fresh action must be brought for the subsequent interest. Ib. The law would no doubt have been holden the same in Pennsylvania, had not an act of assembly removed the palpable injustice. 1 St. Laws, 13.

7. It was formerly laid down in general terms, that no interest could be allowed on the balance of an account for goods sold and delivered ; nor in any case except on promissory notes and bills of exchange. Barnes 228. 1 Dall. 265. It was afterwards ruled, that though by the common law, book debts do not of course carry interest, it may be payable in consequence of the usage of particular branches of trade, or a special agreement, or in case of long delay, under vexatious or oppressive circumstances. Dougl. 361, *per* Ld. MANSFIELD. 1 Dall. 3, 5, *per* M'Kean. Also when it is the established and known course of the trade. 2 Dall. 193, *per tot. cur.*

8. It is now the law, founded on reason and justice, and conducive to fair dealing and punctual payment, that where money is made payable by an agreement between the parties, and a time given for the payment of it, this is a contract to pay interest from the day, in case of failure of payment at the day. 2 Burr. 1088. 3 Wils. 127.

In the case of bankruptcy indeed, where there is sufficient to pay debt and interest, interest on bonds is not to be carried beyond the penalty; although upon other contracts and notes bearing interest, the interest is to be computed at the rate specified, to the full amount due. 1 Atky. 80. 3 Bro. Ch. Ca. 438. That exception stands only on authority. 3 Bro. Ch. Ca. 44.

These are all the observations made and authorities cited in that charge, which are applicable to the case stated for our opinion.

The honesty and honour of the contract as stated, on the part

[Pawling's Ex'rs *v.* Pawling's Adm'rs.]

of the obligor, the indulgence and fairness on the part of the obligee, must strike and force conviction on the understanding of every man who reads it.

Is there any rule of law which forbids the performance of it? If there is, we must be bound by it; but it must be very clear and very strong, thus to entangle the plain justice of the case.

All laws stand on the best and broadest basis, which go to enforce moral and social duties.  3 Term Rep. 63, *per* Ld. KEN-YON.  I have so great a veneration for the law, as to suppose, that nothing can be law, which is not founded in common sense and common honesty.  Ib. 62, *per* Eundem.  4 Term Rep. 512.

*227]  *Courts ought not unless they are absolutely obliged to it, to construe even an act of the legislature, contrary to the plain and clear principles of justice.  5 Burr. 2739, *per* Ld. MANSFIELD.

No cases have been cited by the counsel on either side.  I will briefly state, and observe on such authorities as I presume are relied upon, in favour of the defendants, and then those in support of the plaintiffs' claim.

Proviso in a mortgage, that if interest be behind for six months, then that interest should be made principal and carry interest.  *Per* Cowper, chancellor, no precedent has ever carried the advance of interest so far, that an agreement made at the time of the mortgage will be sufficient to make interest principal; but to make interest principal, it is requisite that interest be first due, and then an agreement concerning it may make it principal.  2 Salk. 449.

This is the case of a mortgage; and even in 2 Ves. jr. 20, where compound interest had been allowed, EYRE, Ch. Justice, said, the court was not to be understood to have laid down any thing upon the subject that had relation to mortgages.  Neither need we now.  The exception as to mortgages stands only on authority.  3 Bro. Cha. Ca. 440.

The case of Sir Thomas Meers, heard before Lord HARCOURT, is an authority in point, that chancery will relieve in cases, which, though perhaps strictly legal, bear hard upon one party. Meers in some mortgages had inserted a covenant, that if interest was not paid at the day, it should be turned into principal, and was relieved against it.  Talb. 40.  There is an implication here, that a covenant to turn interest into principal is not illegal. S. C. cited 1 Atky. 304.

A mortgage made at 5 per cent., but if interest be not paid within two months after due, then to pay 5l. 10s. per cent.; this is in nature of a penalty, and chancery will relieve against it; otherwise if 5l. 10s. be reserved originally, and to be lessened to 5l. per cent. if duly paid within two months after due.  2 Vern. 316, in 1694.  *Quære tamen*, says the reporter, who was the most eminent chancery lawyer of his day, for the agreement of the parties seems to be the same in either case, and whether interest is to be reduced upon compliance with the times of

payment, or to be advanced in default thereof, seems only to be a difference in expressing one and the same thing. Ib. 317. It is said in 1 Wms. 653, that the court will relieve, if only a very short time has happened. In 2 Vern. 134, there is a contrary decision, and the following case is also contrary.

Mortgagee lends money at 6 per cent., and in the deed agrees to take 5 per cent., if paid within three months after due. If mortgagor fail to pay at the precise time, he must afterwards *pay 6 per cent. ; for, by the lord keeper, if it were so, that he must take 5 per cent. yet at least he ought to have interest upon interest, from the time it ought to have been paid. Prec. Cha. 160. See 1 Wms. 653. In this case, the lawfulness of interest upon interest in consequence of a previous agreement, is recognized. [*228

To make interest principal on a mortgage, it is requisite there should be some writing signed by the parties, forasmuch as the land is to be charged therewith. *Per* PARKER C. 1 Wms. 653.

Here the mortgage was at 6 per cent. but mortgagee to accept 5 if paid within 3 months after due ; there being great arrears, mortgagee sent his account computing interest at 6 per cent. and claimed interest upon the amount ; the court held the one per cent. a satisfaction. Prec. Cha. 161. But he must pay the 6 per cent. S. C. cited 2 Bac. Supp. 240.

· The court will order satisfaction to be entered on the record, in an action on a bond of indemnity, on the payment of the penalty and costs. 6 Term Rep. 303. I admit this case to be law where the bond is for the performance of a collateral condition, in which interest is not the measure of damages ; and as against a surety, who otherwise on entering into such bond, in the penalty of 100l. might be liable to pay 10,000l. 2 Bl. Rep. 1190. But where interest is the measure of damages, which the plaintiff can recover, I see no reason why he should not at law recover the whole interest, although it should exceed the penalty in damages.

That a plaintiff may in debt on a bond recover to this extent, is warranted by the following authorities. Show. P. C. 15. Bunb. 23. 2 T. R. 388. A case before Lord MANSFIELD, 6 Geo. 3. cited by Buller. Ib. 389. Bull. Ni. Pri. 62, and in Webster's ex'rs *v.* Wallis, upon argument, judgment was given in the Supreme Court for the penalty of a bond with a collateral condition, with interest from the time the contract ought to have been performed. 2 Dall. 252. See the cases therein cited ; though in equity the plaintiff cannot recover beyond the penalty, unless the defendant comes to ask a favour. Ib.

A covenant to pay interest upon interest is unlawful ; for simple interest is a reasonable compensation, admitted *arguendo*. Comy. Rep. 351. 1 Stra. 171, 174. If simple interest paid yearly, be but a reasonable compensation for the delay of payment of it for a great number of years is not a reasonable com-

pensation ; because by such delay for less than twenty-six years, the obligee loses a sum equal to his whole principal.

These are the principal authorities, that apply in behalf of the defendants, which occur to me at present. And were there no *229] authorities on the other side, I question whether we would feel ourselves obliged to decide, contrary to the plain meaning and stipulation of the parties to the engagement entered into for the accommodation of Henry Pawling.

I will now state such authorities as warrant me in giving an opinion to carry into effect the engagement in the case stated.

Lord THURLOW has said, " I am in favour of interest upon " interest, because I do not see any reason, why, if a man does " not pay interest when he ought, he should not pay interest ." upon that also ; but I have found the court in the constant " habit of thinking the contrary." 1 Ves. jr. 99, 133. He has further said, that compound interest is never to be allowed but on the ground of a contract between the parties to allow it, or to be inferred from the nature of their dealings, as if it were the course of the trade in which they were engaged, and thence to be inferred that it was their intention to allow it. It must be made out to be so, either from a specific contract, or inferred from the usage of the trade, &c. " I have no doubt there may " be a previous contract for compound interest." *Per* Lord Commissioner EYRE in 1792. 1 Ves. jr. 20, 21. Ord. 36. Compound interest may be allowed where there is an express contract for it, or where it is the usage of the trade. *Per* Com. Ashurst. Ib. 21. It is not an unlawful thing in itself. *Per* Com. WILSON. Ib.

This is a decision in point, given after doubts had been entertained (not as to the principle, but whether there was any proof of such contract) by the lord commissioners, who were all sound lawyers, and after consideration. Lord Commissioner EYRE, afterwards lord chief justice of the Common Pleas, was equal in point of sound and dispassionate judgment and integrity, to any judge who ever sat in that court.

Ord was therefore warranted in laying it down, that it is not illegal to stipulate for compound interest, or that interest as it becomes due shall be converted into principal, and carry interest. Ord on Usury 36. He cites 2 H. Bla. 144. 4 T. R. 613. 2 Anstruth. 495.

Receiving interest in advance is no usury. 2 Bla. Rep. 793. Striking the balance quarterly, amounts to a fresh agreement at the beginning of each quarter, to lend the sum then due. And many other cases may be cited, to shew the gradual approaches of the law to the standard of commutative justice.

If there be a covenant for payment of an additional 1 per cent. chancery will not relieve ; thus, where money was lent on mortgage at 5 per cent., and the mortgagor covenanted to pay 6 per cent., if he made default in payment of interest for 60 days after the time of payment, the court ordered, that from

*default made, the mortgagor should pay 6 per cent. ; for, that this covenant was the agreement of the parties, and not to be relieved against as a penalty. 2 Vern. 134. 2 Bac. Sup. 239. *Vid.* Ib. Buston *v.* Slatterley. S. C. 3 Bro. P. C. 68.

Upon the whole ; as this is not the case of a mortgage, even supposing the law of Pennsylvania relative to mortgages were similar to the law of England, which cannot be admitted ; as we find, that in many instances, interest is now allowed, where it was formerly held that it could not be recovered, as there is no rule of law, equity or justice, against the recovery according to the contract in this instance ; as the contract is not for more than 6 per cent. per annum, interest to be paid after that interest becomes due ; as there is not only nothing immoral in the contract, but as it was made with the purest good faith on both sides, and for the accommodation of Henry Pawling, without stipulating for a cent more than the law allows ; I feel myself not only warranted, but compelled by the pure principles of law, rightly understood, and applied to the beneficial intercourse of mankind, to declare that the said covenant is not prohibited by law, but is good and valid.

Cited in 34 Pa. 211 in support of the proposition that compound interest is not recoverable, unless there has been a settlement between the parties, or a judgment, whereby the aggregate amount of principal and interest due is turned into a new principal ; or where there is a special agreement to do so, in such form as to be valid. Interest is never a legal incident to the non-payment of interest.

Cited in 44 Pa. 70 in support of the decision that the coupons of railroad bonds are negotiable instruments, and may be sued on by the holder separate from the bonds ; and interest from the date of demand and refusal of payment may be recovered. Cited for a similar purpose in 105 Pa. 199 ; 15 W. N. C. 372.

Cited and approved in Bainbridge *v.* Wilcocks, 1 Baldw. 536 ; Mowry *v.* Bishop, 5 Paige (N. Y.) 101.